IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Korey Love, | ) | C/A No.: 5:25-4068-JDA-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT  AND RECOMMENDATION |
| | ) | |
| Tonya James, Warden, Kershaw | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Korey Love ("Petitioner") is a state prisoner who filed this counseled petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C.

§ 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on

Respondent's Return and Motion for Summary Judgment. ECF Nos. 17, 18.  After receiving an

extension, ECF No. 21, Petitioner filed a Response in Opposition to Respondent's Motion for

Summary Judgment on October 24, 2025, ECF No. 23, and Respondent filed a Reply to his

Response on November 10, 2025. ECF No. 27.

Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's Motion for Summary Judgment be granted, and this

Petition be denied.

I.    Facts[1]

> On January 27, 2007, at approximately 1:30 a.m., Isaac Bass (Victim) completed
> his shift at the Greenville Wendy's on Pleasantburg Drive and exited the restaurant
> through  the self-locking back door. Victim was  immediately confronted by an
> armed assailant, who attempted to rob Victim.  Victim called for help, and a struggle
> ensued.  Victim broke free from the assailant and attempted to run away; however,
> the assailant shot Victim in the neck.  The assailant and a cohort fled the scene.

---

[1] The facts cited are taken verbatim from the South Carolina Supreme Court order granting, in part,
Petitioner's petition for writ of certiorari. *See* App. 824; ECF No. 17-3 at 52.

Victim got to his feet, walked around the side of the Wendy's, and banged on the drive-thru window. Because he was shot in the neck, Victim was unable to call for help. Victim made his way towards the street and flagged down a passing vehicle. The driver saw Victim on the side of the road and observed two men sprinting away from the Wendy's. The driver stopped to provide Victim assistance; however, Victim did not survive.

Because there was no physical evidence linking the case to any suspect, the case went unsolved for a few years. In 2010, Detective Collis Flavell was assigned to the case. Detective Flavell informed Victim's parents he was working the case, and the community soon became involved in raising reward money and asking people to come forward with information. As a result of these efforts, Detective Flavell received a tip suggesting law enforcement investigate certain members of the Love family.

Following an investigation, Korey Love was arrested and indicted for murder, attempted armed robbery, possession of a weapon during the commission of a violent crime, and possession of a pistol by a person under the age of eighteen. At trial, the State's case was built upon the testimony of several people who explained Love's involvement in Victim's murder.

App. 824; ECF No. 17-3 at 52.

II.    Background

Petitioner is currently incarcerated in the Kershaw Correctional Institution of the South Carolina Department of Corrections. He was indicted at the January 2011 term of the Greenville County Grand Jury for possession of a pistol by a person under 18 years of age, attempted armed robbery, possession of a weapon during the commission of a violent crime, and murder. App. 506-11; ECF No. 17-2 at 506-11.[2] Petitioner proceeded to a jury trial on November 5-8, 2012, before the Honorable Edward W. Miller, Circuit Court Judge. App. 3 *et seq.*; ECF No. 17-1 at 9 *et seq.* Petitioner was represented by Fletcher M. Smith, Esq., and Attorneys Bryna S. Seay and Howard

---

[2] Citations to "App." refer to the Appendix for Petitioner's trial transcript and Post-Conviction Relief ("PCR") proceedings and the page numbers on the top of the page. That appendix is available at ECF Nos. 17-1 to 17-3 in this habeas matter.

L. Steniberg represented the State. App. 1; ECF No. 17-1 at 9. The jury found Petitioner guilty as indicted, and Judge Miller sentenced Petitioner to 50-years imprisonment. App. 498, 504;  ECF Nos. 17-1 at 506, 17-2 at 12.

Petitioner appealed his convictions to the South Carolina Court of Appeals ("Court of Appeals"). ECF No. 17-4.  On appeal, Petitioner was represented by Appellate Defender Benjamin John Tripp, of the South Carolina Office of Appellate Defense, who filed an *Anders* brief of appellant raising the following issue:

> Did the trial court err in denying Appellant's motion for a directed verdict where no eyewitnesses claimed to see the shooting except for Appellant's codefendant who already plea bargained for reduced charges and who was waiting to be sentenced after he testified against Appellant?

*Id*. at 4. Attorney Tripp certified the appeal was without legal merit and asked to be relieved as counsel. *Id*. at 10. Petitioner filed a pro se brief of Appellant on December 12, 2013, raising the following issues on appeal:

> Did the trial court err in denying Appellant's objection that witness was coerced in giving a statement? Did the court violate South Carolina rule of Criminal Procedure 106 where it played a part of something and the rest of it is unconstitutional?

ECF No. 17-5 at 4. On March 2, 2014, the Court of Appeals filed an unpublished decision dismissing Petitioner's appeal. ECF No. 17-6. The remittitur was issued on May 19, 2014. ECF No. 17-7.

III.     Procedural History

Petitioner filed an application for post-conviction relief ("PCR") on April 8, 2015. App. 512-16; ECF No. 17-2 at 20-24. Petitioner asserted he was being held in custody unlawfully because of ineffective assistance of counsel. App. 513; ECF No. 17-2 at 21. The State filed a return

on July 21, 2015. App. 518-22; ECF No. 17-2 at 26-30. A PCR motion hearing convened on February 17, 2016, before the Honorable Daniel Dewitt Hall, Circuit Court Judge. App. 524-614; ECF No. 17-2 at 32-122. Petitioner was present and represented by Attorney E. Charles Grose, Jr., and Assistant Attorney General Karen C. Ratigan appeared on behalf of the State. *See id.* Petitioner's brother Kendel Love, trial counsel Fletcher Smith, and Assistant Solicitor Howard Steinberg  testified at the hearing. *Id.*

The PCR court denied and dismissed Petitioner's PCR application in an order filed on April 1, 2016. App. 645–56; ECF No. 17-2 at 153-64. Petitioner, through counsel, filed a Rule 59(e) motion to alter or amend judgment which the court denied on October 6, 2016. App. 657-71, 676-77; ECF No. 17-2 at 165-79, 184-85.  Petitioner appealed the denial of his PCR application.  App. 680-97; ECF No. 17-2 at 188-205.  Attorney E. Charles Grose, Jr., who represented Petitioner on appeal, filed a petition for writ of certiorari in the South Carolina Supreme Court on May 1, 2017. App. 700-30; ECF No. 17-2 at 208-38. The petition presented the following issues:

### I

Did trial counsel render prejudicial, ineffective assistance of counsel by promising the jurors that Jerome Love and Demetrius Jackson would testify as alibi witnesses, despite knowing these witnesses were unreliable and impeachable, and then failing to call them as witnesses, a failure pointed out by the State in closing?

### II

Did trial counsel render prejudicial, ineffective assistance of counsel for failing to call Kendel Love, Jerome Love, and Demetrius Jackson as alibi witnesses when these witnesses supported Korey Love's alibi, a failure pointed out by the State in closing?

4

### III

Did Korey Love receive prejudicial, ineffective assistance of trial counsel when trial counsel promised during his opening statement the defense would prove the alibi defense and shifted the burden to the defense?

### IV

Did Korey Love receive prejudicial, ineffective assistance of trial counsel when his trial counsel failed to object to a jury instruction that shifted the burden of proof on alibi?

### V

Did Korey Love receive prejudicial, ineffective assistance of appellate counsel when appellate counsel failed to appeal a jury instruction that shifted the burden of proof on alibi?

### VI

Did Korey Love receive prejudicial ineffective assistance of trial counsel when trial counsel when his trial counsel failed to request a correct jury instruction that did not shift the burden of proof on alibi?

### VII

Did Korey Love receive prejudicial, ineffective assistance of trial counsel when trial counsel when his trial counsel elicited testimony from his client that he had been incarcerated for 2 ½ years prior to trial?

### VIII

Did the PCR court err by not allowing Korey Love to amend his PCR application to allege prejudicial, ineffective assistance of trial counsel for not objecting to the Solicitor's "Golden Rule" argument urging the jurors to "be instruments of justice for Isaac Bass"

### IX

Is Korey Love entitled to a new trial based on the cumulative error doctrine?

App. 706-707; ECF No. 17-2 at 214-15 (errors in original). The State filed a return to the petition on September 15, 2017. App. 732-56; ECF No. 17-2 at 240-64. Petitioner filed a reply on October 19, 2017. App. 758-771; ECF No. 17-2 at 266-79. On June 27, 2018, the South Carolina Supreme

5

Court granted certiorari on Petitioner's Question Seven. App. 773; ECF No. 17-3 at 1. Following additional briefing by Petitioner and Respondent, App. 774-819; ECF No. 17-3 at 2-47, the South Carolina Supreme Court issued an order reversing the circuit court's denial of Petitioner's motion to amend his PCR application to add his Question Seven claim and remanded the matter to the circuit court to consider the merits of Question Seven. App. 823-34; ECF No. 17-3 at 51-62. The remittitur was issued on October 18, 2019. App. 835; ECF No. 17-3 at 63.

A PCR motion hearing convened on March 10, 2023, before the Honorable Daniel D. Hall, Circuit Court Judge to address Petitioner's Question Seven claim. App. 836-44; ECF No. 17-3 at 64-72. Petitioner was present and represented by Attorney E. Charles Grose, Jr., and Attorney Taylor Smith appeared on behalf of the State. *See id*. Petitioner's trial counsel Fletcher Smith testified at the hearing. *Id*. The PCR court denied and dismissed Petitioner's Question Seven claim in an order filed on December 1, 2023. App. 886-99; ECF No. 17-3 at 114-27. Petitioner, through counsel, filed a Rule 59(e) motion to alter or amend judgment which the court denied on February 28, 2024. App. 902-27, 928-32; ECF No. 17-3 at 130-55, 156-60.

Petitioner appealed the denial of his PCR application. ECF No. 17-8. Attorney E. Charles Grose, Jr., who represented Petitioner on appeal, filed a petition for writ of certiorari in the South Carolina Supreme Court on July 22, 2024. *Id*. The petition presented the following issues:

### Question I

Did the PCR court err by limiting Korey Love's amendment to his PCR application to consideration of the "golden rule," when this Court remanded for the PCR court to determine whether Mr. Love was entitled to post-conviction relief if the Solicitor's comments violate the Golden Rule or are otherwise improper?

6

Question II

Did the PCR court err by finding the Solicitor's closing argument did not violate Korey Love's due process right to a fair trial?

Question III

Should this Court require post-conviction relief judges to draft the final orders in PCR cases in order to ensure the findings of fact and conclusions of law, required by S.C. Code Ann. § 17-27-80, are those of the court, rather than an advocate, and to preserve the separation of powers between the judicial branch and executive branch as required by S.C. Const. Art. I, § 8?

*Id.* at 5. The State filed a return on November 20, 2024. ECF No. 17-9. The South Carolina Supreme Court issued an order denying certiorari on April 2, 2025. ECF No. 17-10. The remittitur was issued on April 18, 2025. ECF No. 17-11. The instant habeas Petition was filed on May 15, 2025. ECF No. 1.

 III. Discussion

  A. Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

**GROUND ONE:** Trial counsel rendered prejudicial, ineffective assistance of counsel by promising the jurors that Jerome Love and Demetrius Jackson would testify as alibi witnesses, despite knowing these witnesses were unreliable and impeachable, and then failing to call them as witnesses, a failure pointed out by the State in closing.

**GROUND TWO**: Alternatively to Ground 1, trial counsel rendered prejudicial, ineffective assistance of counsel for failing to call Kendel Love, Jerome Love, and Demetrius Jackson as alibi witnesses when these witnesses supported Korey Love's alibi, a failure pointed out by the State in closing.

**GROUND THREE**: Korey Love received prejudicial, ineffective assistance of trial

7

counsel when trial counsel promised during his opening statement the defense would prove the alibi defense and shifted the burden to the defense.

**GROUND FOUR**:    Korey Love received prejudicial, ineffective assistance of trial counsel when trial counsel when his trial counsel failed to object to a jury instruction that shifted the burden of proof on alibi.

**GROUND FIVE**:    Alternatively to Ground 4, Korey Love received prejudicial, ineffective assistance of appellate counsel when appellate counsel failed to appeal a jury instruction that shifted the burden of proof on alibi.

**GROUND SIX**:    Korey Love received prejudicial, ineffective assistance of trial counsel when trial counsel when his trial counsel failed to request a correct jury instruction that did not shift the burden of proof on alibi.

**GROUND SEVEN**:    Korey Love received prejudicial, ineffective assistance of trial counsel when his trial counsel elicited testimony from his client that he had been incarcerated for 2 ½ years prior to trial.

**GROUND EIGHT**:    Korey Love received prejudicial, ineffective assistance of trial counsel when his trial counsel failed to object to the improper closing argument of the solicitor which impermissibly appealed the passion of the jurors.

ECF No. 1 at 5-15 (errors in original).

> B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion

either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### C.     Habeas Corpus Standard of Review

#### 1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief

9

unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

a.    Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is

11

entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.    Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403. When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

12

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

   (A)    the applicant has exhausted the remedies available in the courts of the State; or

   (B)    (i) there is an absence of available State corrective process; or

   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).  Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of

error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

<b>b.     Procedural Bypass</b>

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:  [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

15

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule [,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner*

16

*v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.     Analysis

A.     Grounds One and Two

In Ground One, Petitioner alleges trial counsel rendered prejudicial, ineffective assistance of counsel by promising the jurors that Jerome Love and Demetrius Jackson would testify as alibi witnesses, despite knowing these witnesses were unreliable and impeachable, and then failing to call them as witnesses, a failure pointed out by the State in closing.  ECF No. 1 at 5. Alternatively, Petitioner alleges in Ground Two that trial counsel rendered  prejudicial, ineffective assistance of counsel for failing to call Kendel Love, Jerome Love, and Demetrius Jackson as alibi witnesses when these witnesses supported Petitioner's alibi, a failure pointed out by the State in closing. *Id*. at  7.

The PCR court found Petitioner failed to meet his burden of proving trial counsel was ineffective when he did not call alibi witnesses and properly present Petitioner's alibi defense. App. 648; ECF No. 17-2 at 156. In denying this claim, the PCR court noted the testimony of Petitioner's younger brother Kendel Love who stated

> he was 12-13 years old in 2007 and that he, the Applicant, and his father lived with Demetrius Jackson's family at that time. Love stated he and the Applicant had a curfew while they were staying at the Jacksons' home and that it was 10:30 p.m. on weekdays and 12:00-1:00 a.m. on weekends. Love stated an adult would have known if the Applicant had not observed the curfew. Love stated on cross-examination that he knew the Applicant was home on the night in question because he "was always there."

App. 649; ECF No. 17-2 at 157. The PCR court also referenced the testimony of Petitioner's trial

counsel who

> testified the defense strategy was to argue alibi and to challenge the credibility of the State's witnesses. Trial counsel testified the Applicant and Leslie Jackson each testified at trial as to the Applicant's alibi. Trial counsel testified the Applicant told him to contact alibi witnesses and that he talked to them. Trial counsel testified he did not call Kendel Love as an alibi witness at trial because he was "wishy-washy'' and would not have been a good witness. Trial counsel testified Jerome Love and Demetrius Jackson were on standby at trial as potential alibi witnesses. Trial counsel testified Jerome Love had an outstanding arrest warrant so he had an agreement with the State and the trial judge that Love would not be arrested. Trial counsel testified he could not subpoena Jerome Love, however, because he could not locate him and Love would not come meet with him in his office. Trial counsel testified Jerome Love showed up right before court but noted the State had provided recordings of calls from the jail where Jerome Love had made racist statements to the Applicant. Trial counsel testified he had Demetrius Jackson under subpoena but decided not to call him. Trial counsel noted Demetrius Jackson had a prior conviction that could be used to impeach him. Trial counsel testified he believed he could make an alibi argument through just the Applicant and Leslie Jackson.

*Id*. (internal footnote omitted). The PCR court also noted the testimony of the Assistant Solicitor Howard Steinberg who

> testified he was one of the two prosecutors on this case. Steinberg testified he turned over full discovery to trial counsel, which included recordings of phone calls made from the Applicant to family members while he was in jail. Steinberg testified he would have cross-examined and attempted to impeach Jerome Love with these calls if he had testified at trial. Steinberg testified he saw Jerome Love outside of the courthouse and noted the State had agreed - after a prior meeting with trial counsel and the trial judge - not to arrest him on a pending arrest warrant during the Applicant's trial.

App. 649-50; ECF No. 17-2 at 157-58. In denying this ineffective assistance of counsel claim, the

court found:

> . . . Applicant did not meet his burden of proving either that trial counsel's performance was deficient or that he was prejudiced as a result. This Court finds trial counsel articulated valid reasons that he did not call Kendel Love, Jerome Love, or Demetrius Jackson as alibi witnesses at the Applicant's trial. Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective

18

assistance of counsel). As such, trial counsel's performance cannot be deemed deficient.

Regardless, this Court finds the Applicant cannot demonstrate he was prejudiced because Kendel Love, Jerome Love, or Demetrius Jackson did not testify. This Court finds there is no reasonable probability that these witnesses would not have affected the outcome of the Applicant's trial. Johnson v. State, 325 S.C. at 186, 480 S.E.2d at 735. Initially, this Court finds the Applicant has failed to show these witnesses, when combined with the rest of the defense case, would have established a complete alibi. Glover v. State, 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995) (finding that trial counsel's failure to present a purported alibi witness was not ineffective when that witness's testimony was insufficient to establish an alibi defense); State v. Robbins, 275 S.C. 373, 271 S.E.2d 319 (1980) (holding that since an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the defendant's guilt, a purported alibi which leaves it possible for the defendant to be the guilty person is no alibi at all). This Court finds Kendel Love was not a credible or compelling witness because, while he stated the Applicant would have been home on the evening of the crime, he could not explain why he recalled that particular date. Though this Court examined the affidavits from Jerome Love and Demetrius Jackson, it does not find such to be compelling evidence. In any event, even if these witnesses had been called in the defense case, they would have been easily attacked with impeachable evidence by the State. This Court finds Jerome Love and Demetrius Jackson would have merely added- at best - cumulative testimony to Leslie Jackson. As such, this Court finds there is no reasonable probability that calling additional alibi witnesses would have changed the outcome of the Applicant's trial. See Johnson v. State, 325 S.C. at 186, 480 S.E.2d at 735.

App. 650-51; ECF No. 17-2 at 158-59.

Respondent moves for summary judgment on Petitioner's Grounds One and Two claims. ECF No. 17 at 18. Respondent argues that Ground One is only partially preserved and argues, as to the exhausted claim, that the PCR court reasonably adjudicated the issues based on the testimony presented at the evidentiary hearing, and in consideration of the facts of record and a careful credibility determination. *Id*. at 19.

In his response, Petitioner contends the PCR court's finding that counsel was not deficient in failing to call witnesses he promised to call is an unreasonable determination of the facts and an

19

unreasonable application of *Strickland.* ECF No. 23 at 8-12. Petitioner also argues he was prejudiced by counsel's opening statement because trial counsel lost credibility with the jury by promising testimony from witnesses he failed to call. *Id*. at 12-13.

In reply, Respondent contends counsel's failure to call witnesses he mentioned in his opening statement is not per se deficient. ECF No. 27 at 2. Respondent argues Petitioner has not shown the PCR court's analysis of this issue misapplied *Strickland*, or, even if there was an error, that it was unreasonable. *Id*. at 3.

The undersigned finds Petitioner cannot satisfy the *Strickland* test. The court has reviewed the record and cannot find the PCR court's application of the *Strickland* standard was unreasonable. The PCR court noted that although trial counsel did state in his opening that he would present an alibi defense through several witnesses, counsel ultimately decided to present the alibi defense through testimony from Petitioner and Leslie Jackson. The PCR court explained trial counsel decided not to call the additional witnesses because of credibility and impeachment issues and his belief that he could make an alibi argument through just the Applicant and Leslie Jackson. In light of the evidence presented at trial and the PCR hearing, the undersigned finds support in those records for the PCR court's finding that trial counsel was not ineffective for failing to call additional alibi witnesses. The undersigned also finds the PCR court did not err in finding Petitioner was not prejudiced by any alleged deficiencies of his trial counsel given the cumulative nature of the other witnesses testimony. Petitioner has failed to overcome the standard of review accorded the state court's determination of this issue of ineffective assistance of counsel under *Harrington*. Petitioner has not shown the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, it was unreasonable. *See Williams*, 529 U.S.

20

at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this claim, and

the undersigned recommends Grounds One and Two be dismissed.

           **B.**      **Ground Three**

In Ground Three, Petitioner alleges he received prejudicial, ineffective assistance of trial

counsel when trial counsel promised during his opening statement the defense would prove the

alibi defense and shifted the burden to the defense. ECF No. 1 at 8.

In denying this claim, the PCR court found Petitioner failed to meet his burden of proving

trial counsel made improper comments in his opening statement. App. 651; ECF No. 17-2 at 159.

The PCR noted trial counsel's testimony as follows:

> Trial counsel testified that, during his opening statement, he said he would prove
> the Applicant's alibi. Trial counsel confirmed his opening statement also noted the
> names of several alibi witnesses, including Kendel Love, Jerome Love, and
> Demetrius Jackson. Trial counsel testified his strategy in opening argument was to
> take a powerful position that they were going to prove their defense. Trial counsel
> testified he did not mislead the jury because he put up an alibi defense.

*Id*. The PCR court found Petitioner failed to meet his burden to show his trial counsel was

ineffective, or that Petitioner was prejudiced by trial counsel's performance. *Id*. The court

explained

> In his opening argument, trial counsel stated the defense was going to prove the
> Applicant was not guilty because he was home on the night of the murder. (Trial
> transcript,, p.58). Trial counsel noted they were going to call alibi witnesses: Leslie
> Jackson, Jerome love, and Demetrius Jackson. (Trial transcript, pp.58-59). As
> explained <u>supra</u> trial counsel did not call Jerome Love or Demetrius Jackson as
> witnesses but presented the alibi defense through the testimony of the Applicant
> and Leslie Jackson. This Court finds trial counsel was not deficient in making these
> comments in his opening argument. It is axiomatic that counsel's arguments to the
> jury do not constitute evidence. See <u>Ex parte Morris</u>, 367 S.C. 56, 64, 624 S.E.2d
> 649, 653 (2006) ("It is well established that counsel's statements regarding the facts

of a case and counsel's arguments are not admissible evidence."); South Carolina Dep't of Transp. v. Thompson, 357 S.C. 101, 105, 590, S.E.2d 511, 513 (Ct. App. 2003) ("Arguments made by counsel are not evidence."). Trial counsel was merely staking  out a  strong position in opening argument. This was not deficient representation. See, e.g. Ard v. Catoe, 372 S.C. 318, 331, 642 S.E.2d 590, 597 (2007) ("There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decision, in the case."). This Court finds there was no error because trial counsel did present an alibi defense to the jury. Regardless, the Applicant failed to demonstrate he suffered any prejudice. As discussed supra, any testimony from Jerome Love or Demetrius Jackson would have been cumulative to Leslie Jackson's testimony. The Applicant cannot demonstrate there was a reasonable probability that trial counsel's statement that he would call these individuals-which was ultimately not the case-affected the outcome of the Applicant's trial. See Johnson v. State, 325 S.C. at 186, 480 S.E.2d at 735.

App. 652; ECF No. 17-2 at 160.

Respondent moves for summary judgment on Ground Three. ECF No. 17 at 21-22. Respondent contends the PCR court reasonably concluded that trial counsel was merely attempting to show the jury that the Petitioner's alibi would acquit him of the crime. *Id*. Respondent also claims the PCR court properly concluded that Petitioner could show no prejudice as the trial court's instruction to the jury on alibi was proper and not burden shifting. *Id*.

In Response,  Petitioner argues the merits of his Ground Three claim. ECF No. 23 at 14-15.  Petitioner also contends the PCR court never addressed the merits of the burden shifting nature of counsel's opening statement in spite of Petitioner identifying this failure in his Rule 59 motion. *Id*. at 15. Petitioner asks the court to review this ground de novo. *Id*.

In Reply, Respondent contends Petitioner's burden shifting argument was resolved by the PCR court's determination that the alibi defense was presented and the jury instruction on the alibi was not burden shifting. ECF No. 27 at 3.

Having reviewed the record and considered the weight of the evidence and the extent of

these comments, the court finds trial counsel's opening comments did not amount to ineffective assistance of counsel and improper burden shifting. As noted by the PCR court, trial counsel was staking out a strong position in opening argument, his opening statements were not evidence, and trial counsel did present an alibi defense to the jury. The PCR court also noted the trial court correctly charged the jury on the presentation of an alibi defense at the conclusion of the trial. The undersigned finds, taking trial counsel's statements in the context in which they were made, that trial counsel directed the jury to Petitioner's defense and sought to establish that Petitioner was innocent because he was not present at the crime scene. The undersigned further finds that the court's charge to the jury on an alibi defense was a correct statement of South Carolina law. *See Infra*, Section C. The undersigned cannot find that the adjudication of this claim by the state courts was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. The undersigned also finds the PCR court reasonably found Petitioner suffered no prejudice because of trial counsel's choice of words. Because Petitioner cannot meet either prong of *Strickland*, the state court appropriately denied relief. The undersigned recommends Respondent be granted summary judgment on Petitioner's Ground Three claim.

> C.      Grounds Four and Six

In Ground Four, Petitioner contends he received prejudicial, ineffective assistance of trial counsel when trial counsel failed to object to a jury instruction that shifted the burden of proof on alibi. ECF No. 1 at 9. In Ground Six, Petitioner alleges he received prejudicial, ineffective assistance of trial counsel when trial counsel failed to request a correct jury instruction that did not shift the burden of proof on alibi. *Id*. at 10.

Concerning self-defense, the trial court instructed the following to the jury:

23

> Now, the defendant has raised the defense of alibi and in order to establish an alibi **it must be shown** that the defendant was at another specified place at the time the crime was committed and that it was therefore impossible for the defendant to have been at the scene of the crime. Mere denial of presence at the of a crime does not constitute an alibi. There is no burden on the defendant to prove an alibi, the burden is on the State to prove beyond a reasonable doubt that the defendant was actually present at the scene of the crime, actually participated in it and was not somewhere else.

App. 483, ECF No. 17-1 at 491 (emphasis added).

The PCR court found Petitioner failed to meet his burden of proving trial counsel should have objected to the alibi jury instruction. App. 653; ECF No. 17-2 at 161.  The PCR court noted trial counsel testified that he

> believed the trial judge's alibi charge was consistent and not objectionable. Trial counsel testified he did not believe the alibi charge was burden-shifting. This Court finds the Applicant did not meet his burden of proving either that trial counsel's performance was deficient or that he was prejudiced as a result. The trial judge charged the jury on the defense of alibi. (Trial transcript, p.483). While trial counsel voiced an objection "out of an abundance of caution" regarding the "mere denial" language of the charge, the trial judge explained the charge was proper because "he can't just say he wasn't there, he's gotta specify where he was." (Trial transcript, p.485). This Court finds there was no error in trial counsel not further challenging the jury charge because it was a proper charge on the defense of alibi. See State v. Peer, 320 S.C. 546, 553, 466 S.E.2d 375, 380 (Ct. App. 1996) (holding a trial court has a duty to give a requested instruction that correctly states the law applicable to the issues and is supported by the evidence). Similarly, the Applicant cannot prove he suffered any prejudice from this jury charge because it was a proper instruction on the defense of alibi.

App. 654; ECF No. 17-2 at 162.

Respondent contends PCR court reasonably adjudicated the Ground Four and Six claims, and summary judgment is appropriate and warranted. ECF No. 17 at 22. Respondent contends the PCR court's conclusion that trial counsel was not deficient for failing to object to the alibi charge was consistent with state law precedent and a "reasonable resolve" of *Strickland*. *Id*. at 23-24.

In Response, Petitioner argues the order of dismissal's finding that trial counsel did not err

24

in not challenging the "it must be shown" alibi instruction "because it was a proper charge on the defense of alibi" was both an unreasonable application of established federal law and an unreasonable determination of the facts. ECF No. 23 at 17. Respondent claims the PCR court's finding appears to be influenced by trial counsel's belief that the alibi charge was not objectionable and not burden shifting and not based on an independent review of the jury instruction and this was an unreasonable determination of the facts. *Id.*

In reply, Respondent claims Petitioner has not shown that the state court precedent cited by the PCR court is contrary to Supreme Court precedent or an unreasonable application of the facts. ECF No. 27 at 6. Respondent contends that, in resolving that the jury instruction was proper, the PCR court's application of *Strickland* was reasonable. *Id.*

The undersigned finds that Petitioner cannot show the PCR court unreasonably applied federal law or unreasonably applied the facts in denying relief upon this claim. Here, the PCR court found the trial court gave a correct jury instruction concerning alibi, and because Petitioner was not entitled to a different jury charge as a matter of state law, Petitioner cannot show that trial counsel was deficient in not objecting to or requesting a different charge. Based on the trial court's jury instruction as a whole, the undersigned finds Petitioner suffered no prejudice from the "it must be shown" language that was part of the alibi jury instruction. Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, the undersigned recommends granting Respondent's Motion for Summary Judgment as to Grounds Four and Six.

   D. Ground Five

Petitioner alleges, alternatively, in Ground Five that he received prejudicial, ineffective assistance of appellate counsel when appellate counsel failed to appeal a jury instruction that

25

shifted the burden of proof on alibi. ECF No. 1 at 10.

Respondent alleges the PCR court did not address this ground and Petitioner failed to request a specific ruling on appellate counsel's representation and the preservation issue in his Rule 59 motion, and therefore this claim is defaulted. ECF No. 17 at 23.

In response, Petitioner contends this ground is not defaulted as it was raised to the PCR court, in his Rule 59 motion, and raised to the South Carolina appellate courts. ECF No. 23 at 17-18. Petitioner seeks a de novo review. *Id*.

In Reply, Respondent disagrees with a de novo review of this ground alleging the PCR court determined the alibi jury instruction was not burden shifting, and that counsel was not ineffective for failing to object. ECF No. 27 at 7. Respondent contends this issue was therefore not preserved and appellate counsel would have been procedurally barred from raising this issue on appeal. *Id*. Respondent also points out that there was not testimony presented at the PCR hearing on this issue. *Id*.

The PCR court noted Petitioner failed to present any testimony, argument, or evidence on any ground that was raised in the PCR application but not specifically addressed in the PCR order, and therefore the PCR court found Petitioner had abandoned those allegations. App. 655-56; ECF No. 17-2 at 163-64. Moreover, the undersigned finds Petitioner cannot satisfy the *Strickland* test on his Ground Five claim. Petitioner cannot show appellate counsel's failure to raise claims concerning the challenged alibi jury instruction was objectively unreasonable as the PCR court found the jury instruction was a correct statement of the law. Petitioner has also not shown that there was a reasonable probability Petitioner would have prevailed if appellate counsel had raised

26

this claim as this claim was not preserved. Based on the foregoing, Petitioner is not entitled to

federal habeas relief on this ground, and the undersigned recommends Respondent be granted

summary judgment on Ground Five.

> E.      Ground Seven

In Ground Seven, Petitioner alleges he received prejudicial, ineffective assistance of trial

counsel when his trial counsel elicited testimony from his client that he had been incarcerated for

2.5 years prior to trial. ECF No. 1 at 12.

The PCR court found Petitioner failed to meet his burden to prove trial counsel should not

have elicited testimony that Petitioner was incarcerated prior to trial. App. 653, ECF No. 17-2 at

161. The PCR court noted trial counsel's testimony that his strategy in eliciting the testimony that

Petitioner was in jail for 2.5 years was to show Petitioner was the victim and had been falsely

accused. *Id*. The PCR court explained:

> This Court finds the Applicant did not meet his burden of proving either that trial
> counsel's performance was deficient or that he was prejudiced as a result. During
> trial counsel's opening argument, he noted the Applicant had been indicted "for
> approximately two and a half years." (Trial transcript, p.57). During his direct
> examination of the Applicant, trial counsel asked if he had been in jail for 2.5 years
> and the Applicant said yes. (Trial transcript, p.430). Trial counsel testified he chose
> to emphasize this point because he wanted to show the Applicant had been falsely
> accused and this would help the idea of his victimization. This Court finds that,
> especially when combined with an alibi defense, this was a reasonable trial strategy.
> See Roseboro v. State, 317 S.C. at 294, 454 S.E.2d at 313; see also Whitehead v.
> State, 308 S.C. 119, 122, 417 S.E.2d 529, 531, (1992) ("Courts must be wary of
> second-guessing counsel's trial tactics.''). This Court finds this was clearly a part
> of trial counsel's strategy, as he reemphasized the Applicant's lengthy
> imprisonment during his closing argument. (Trial transcript, p.453). This Court
> finds the Applicant failed to demonstrate he suffered any prejudice as the result of
> trial counsel's mention of his 2.5-year incarceration. This is especially true, as a
> State witness also noted in her testimony that she visited the Applicant in jail after
> he was arrested on these charges. (Trial transcript, p.238). Cherry v. State, 300 S.C.
> at 117-18, 386 S.E.2d at 625.

*Id.*

Respondent moves for summary judgment and argues the PCR court reasonably concluded that Petitioner is not entitled to relief based on trial counsel's testimony that supported an explanation of sound trial strategy. ECF No. 17 at 26. Respondent contends the PCR court's findings were not contrary to, nor did they involve an unreasonable application of *Strickland* or result in a decision that was an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Id*.

In response, Petitioner argues the PCR court did not address the South Carolina Rule of Evidence 404(a) or other South Carolina state court precedent in its ruling. ECF No. 23 at 18. Petitioner alleges the court's finding that the introduction of Petitioner's pre-trial confinement was a valid strategy is both an unreasonable determination of facts and an unreasonable application of *Strickland*. *Id*. at 18-19.

In Reply, Respondent relies on the argument presented in his return and memorandum of law. ECF No. 27 at 8.

Here, trial counsel testified that part of his trial strategy was to emphasize Petitioner's 2.5-years of incarceration prior to trial because trial counsel wanted to show the Petitioner had been falsely accused and this would help the idea of his victimization. The PCR court found that this point of emphasis, along with Petitioner's alibi defense, was a reasonable trial strategy. Courts must be wary of second-guessing counsel's trial tactics; and where counsel articulates a valid reason for employing such strategy, such conduct is not ineffective assistance of counsel if objectively reasonable under the circumstances. *Strickland v. Washington*; *Whitehead v. State*, 417 S.E.2d 529 (S.C. 1992). The undersigned finds the state court's rejection of this claim was not

28

objectively unreasonable, and Petitioner has not established entitlement to habeas relief on his Ground Seven claim.

F.    Ground Eight

In Ground Eight, Petitioner claims he received prejudicial, ineffective assistance of trial counsel when his trial counsel failed to object to the improper closing argument of the solicitor which impermissibly appealed to the passion of the jurors. ECF No. 1 at 12.

The solicitor made the following statement during his closing:

> This is your opportunity to do justice in this case under the oath that you have taken. You can be instruments of justice for [Victim]. His death was not the final chapter of his life, this trial is the final chapter of his life.

App. 824-25, ECF No. 17-3 at 52-53.

The PCR court denied this claim finding trial counsel credibly testified he understood what constituted a Golden Rule argument, and he did not consider the challenged argument to be one. App. 893; ECF No. 17-3 at 121. The PCR court explained that he considered the challenged argument in the context of the entire trial record and found that the solicitor's argument did not violate the Golden Rule. *Id*. The PCR court agreed, explaining:

> Simply, the solicitor never divorced the request for justice from the evidence and the State's burden of proof. The solicitor did not ask the jury to place themselves in the shoes of the victim nor did she appeal to the jury to decide the case on an emotional basis. The solicitor simply asked the jury to administer justice- the very responsibility that the jurors held. This argument is directly in line with that in State v. Rice, 375 S.C. 302, 652 S.E.2d 409 (Ct. App. 2007), overruled on other grounds by State v. Byers, 392 S.C. 438, 710 S.E.2d 55 (2011).

App. 894-95; ECF No. 17-3 at 122-23 (footnotes omitted). The PCR court found Petitioner could not show counsel's representation in not objecting, when viewed in the context of the remaining record and the existing, guiding precedent at trial, was contrary to "reasonable professional judgment." App. 895; ECF No. 17-3 at 123. The PCR court further found, in the alternative, that Petitioner was not prejudiced by the argument in question as the three sentences requesting justice did not have a prejudicial effect of the jury's ability to remain neutral  and come to an unbiased guilty verdict. *Id*.

Respondent moves for summary judgment arguing the PCR court's conclusion that Petitioner was not ineffective for failing to raise an objection  to the solicitors comments, and that Petitioner failed to establish he was prejudiced by these comments was a reasonable application of *Strickland* in light of the state court record and controlling law. ECF No. 17 at 29-30.

In Response, Petitioner contends the Solicitor's comments sought for the jury to abandon their impartiality, and Petitioner contends the PCR court's contrary interpretation was both an unreasonable determination of the facts and an unreasonable application of *Strickland.* ECF No. 23 at 21.

In Reply, Respondent relies on the argument presented in his return and memorandum of law. ECF No. 27 at 8.

In examining claims pertaining to improper comments by a prosecutor, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). However, the *Darden* Court noted that "it is not enough that the remarks were undesirable or even universally condemned." *Id*. (internal quotation omitted). Having reviewed the record and

considered the extent of these comments, the court finds the solicitor's comments did not render Petitioner's trial fundamentally unfair. Petitioner has also failed to establish there is a reasonable probability that the result of the proceeding would have been different if trial counsel had objected. *Strickland,* 466 U.S. at 694. Accordingly, Petitioner cannot establish that trial counsel was constitutionally ineffective in failing to object during closing arguments. Moreover, Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams v. Taylor*, 529 U.S. at 410. Based on the foregoing, the undersigned recommends Respondent be granted summary judgment on Petitioner's Ground Eight.

V.    Conclusion and Recommendation

Based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 18, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

July 7, 2026                                         Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).